UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**MIKE WOODS,**

      **Plaintiff,**

v.                                          Case No:  6:13-cv-726-Orl-41DAB

**ON BALDWIN POND, LLC and
DANIEL PELLI,**

      **Defendants.**

                                      /

## ORDER

THIS CAUSE is before the Court on cross-motions for summary judgment: Defendants' Motion for Summary Judgment (Doc. 32) and Plaintiff's Motion for Summary Judgment (Doc. 57). This cause is also before the Court on Plaintiff's Motion in Limine (Doc. 56) and Defendants' Motion to Strike Plaintiff's Amended Response or to File a Sur-Reply (Doc. 85). United States Magistrate Judge David A. Baker issued a report recommending that both Motions for Summary Judgment and Plaintiff's Motion in Limine be denied. (Doc. 72). The parties have filed Objections to the Magistrate's Report and Recommendation, (Doc. Nos. 73, 76), and Responses thereto, (Doc. Nos. 78, 79, 81). After an independent, *de novo* review of the record, the Court agrees with Judge Baker's analysis in his Report and Recommendation and will take the action recommended therein. Additionally, Defendants' Motion to Strike or File a Sur-Reply will be denied.

### I.  BACKGROUND

Defendants purchased On Baldwin Pond, a sixty-unit apartment complex, in July 2010. (Pretrial Stmt., Doc. 82, at 4). At that time, Defendant Daniel Pelli hired Plaintiff to perform general maintenance and repair of On Baldwin Pond. (*Id.*). Plaintiff was employed by Defendants

from July 2010 through the beginning of January 2013; the exact date of Plaintiff's termination is disputed. (*Id.* at 4, 7). Plaintiff, who was paid hourly, was generally scheduled to work Monday through Friday from 8:00 a.m. to 4:00 p.m. (Woods Decl., Doc. 57-2, ¶ 7).

According to Plaintiff, in addition to his regular schedule, he frequently worked overtime and was required to remain on call in the evenings and on weekends. (*Id.* ¶¶ 7–8). On the other hand, according to Defendants, Plaintiff had a flexible schedule and that if Plaintiff was required to work in the evening or on a weekend, he worked fewer hours on the subsequent days. (Pelli Dep., Doc. 63-4, at 57:9–25). Defendants also assert that Plaintiff's numerous breaks made up for any time that he may have worked outside of his regular schedule. (*Id.* at 58:1–5). Defendants' time sheets are at best, incomplete. (*See id.* at 46:4–47:14; 52:10–25; 55:13–56:6; 71:10–72:10; 74:19–22 (explaining Defendants' erratic record-keeping policies)).

Throughout his employment, Plaintiff lived at On Baldwin Pond and received discounted rent. (Pretrial Stmt. at 5–6). In his first two lease agreements, Plaintiff signed a "Concession Addendum," providing that the reduction in Plaintiff's rent was contingent on Plaintiff remaining employed by Defendants. (*Id.*). Plaintiff's second lease agreement expired on August 14, 2011. (Residential Lease Agreement Renewal, Doc. 57-16, at 2[1]). After the second lease expired, Plaintiff continued to live at On Baldwin Pond without a lease. (Woods Dep., Doc. 33, at 93:23–94:5). In or around November 2012, Plaintiff approached Maggie Cabrera, the property manager at the time, about obtaining a new lease. (Cabrera Decl., Doc. 57-7, ¶ 9). Plaintiff explained to Ms. Cabrera that his daughter was coming to live with him and that she needed proof of residency for school. (*Id.*; Woods Dep. at 94:9–95:8). Ms. Cabrera and Plaintiff executed Plaintiff's final lease

---

[1] Pincites to the Residential Lease Agreement Renewal are to the electronic page numbers because the original document does not contain page numbers.

agreement approximately two months later, on January 4, 2013, the same day that Plaintiff interviewed for a new job. (Cabrera Decl. ¶ 10; Pretrial Stmt. at 6, 7). Although there is record evidence that Plaintiff understood that he received a discounted rental rate because he was an employee, (*see* Woods Dep. at 93:8–19), he did not make any affirmative representations as to whether he would continue working for Defendants at the time he signed the new agreement, (Cabrera Decl. ¶ 12). The final lease agreement referenced a Concession Addendum, (Pretrial Stmt. at 7), but Plaintiff did not sign such an addendum when he executed the lease, (Cabera Decl. ¶ 11), and neither party has a copy of such an addendum, (Pretrial Stmt. at 6–7).

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251–52); *see also*

*Laroche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.   ANALYSIS

In his Complaint (Doc. 1), Plaintiff asserts that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by failing to pay Plaintiff for his last week of work and for failing to properly compensate him for overtime hours. Defendants filed a Counterclaim (Doc. 8), asserting that Plaintiff fraudulently induced Defendants to enter into a reduced-rate lease agreement by falsely representing that Plaintiff intended to continue working for Defendants. (Countercl. at 10–12). There are genuine issues of material fact as to each claim and therefore, summary judgment is not appropriate.

####   A.   FLSA Claims

Under the FLSA, employers, as defined by statute, must pay covered employees minimum wages for all hours worked, 29 U.S.C. § 206(a), and overtime wages for those hours in excess of forty hours per workweek, *id.* § 207(a). The parties agree that Defendants constitute employers within the meaning of the FLSA and that Plaintiff was a covered employee, (Pretrial Stmt. at 4–5), but they dispute whether Plaintiff actually worked overtime and whether he was compensated for hours he worked during his final week of employment.

#####     *1.   Overtime Claim*

Aside from the first few weeks of Plaintiff's employment, the parties agree that Plaintiff was not paid overtime wages. As explained by Judge Baker in his Report and Recommendation, however, summary judgment is not appropriate on Plaintiff's overtime claim because the crux of the claim—whether Plaintiff actually worked overtime hours—is in dispute. Plaintiff's sworn

testimony indicates that he worked approximately forty-four hours per week, (Woods Decl. ¶¶ 7–9), and Plaintiff has submitted the sworn declarations of all three of the property managers with whom Plaintiff worked, indicating that he regularly worked anywhere from forty-four to fifty hours per workweek. (Nash Decl., Doc. 57-6, ¶¶ 9–12; Cabrera Decl. ¶¶ 6–8; Matos Decl., Doc. 57-8, ¶ 13). In his deposition testimony, Plaintiff also states that he was generally very busy throughout the day, that he only took a few minutes for lunch, and that he ate "on the run." (Woods Dep. at 32:5–11, 60:9–21).

In opposition, Defendants submitted the sworn testimony of Defendant Pelli, stating that he personally observed Plaintiff taking numerous breaks, amounting to approximately ten hours per workweek. (Pelli Dep. at 47:24–49:22, 57:9–58:18; Pelli Decl., June 13, 2014, Doc. 59-1, ¶¶ 8–9[2]). Defendants also submitted Plaintiff's cell phone and bank records and extrapolate therefrom the amount of time Plaintiff spent off-site on personal errands, breaks and personal phone calls. (*See generally* Doc. Nos. 63–69 and Exs. thereto).

Thus, the parties' opposing testimony creates issues of material fact and despite Defendants' urging, the Court will not discredit Plaintiff's Declaration. "Assessing witness credibility is uniquely the function of the trier of fact." *U.S. v. Peters*, 403 F.3d 1263, 1270 (11th Cir. 2005). Furthermore, the mere fact that Plaintiff's declaration is far more detailed than his deposition testimony does not on its own, transform the declaration into a "sham." "An affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without

---

[2] The Court does not consider the legal arguments and statements contained in Pelli's Declaration of which Pelli has no personal knowledge.

explanation, previously given clear testimony.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). Nothing in Plaintiff's declaration directly contradicts his deposition testimony.

Accordingly, the parties' cross motions for summary judgment on Plaintiff's overtime claim will be denied.

### 2. *Minimum Wage Claim*

In Plaintiff's minimum wage claim, he asserts that Defendants unlawfully withheld Plaintiff's pay for his final week of work. Defendants moved for summary judgment on this claim, (Defs.' Mot. Summ. J. at 8–9), but Plaintiff did not address the claim in his Response, nor did he move for summary judgment on the claim. Additionally, in his initial Response to Defendants' Objections to the Report and Recommendation, Plaintiff stated that he "d[id] not oppose Defendants' requested relief as it pertains to the requested dismissal of Plaintiff's final paycheck claim." (Pl.'s Resp. to Defs.' Objection, Doc. 78, at 1 n.1). Nevertheless, eight days later, Plaintiff filed an "Amended Response," wherein Plaintiff retracts his previous statement and opposes the entry of summary judgment as to his minimum wage claims.

Attached to Plaintiff's Amended Response is an email that clearly establishes a genuine issue of material fact as to Plaintiff's minimum wage claim. The email indicates that Plaintiff's last week of work was December 31, 2012, through January 4, 2013, and that Plaintiff was not paid for the hours worked during that week. (Jan. 20, 2013 Email from Pelli to Woods, Doc. 81-1). However, it also contains an explanation as to why Plaintiff was not paid, specifically that Plaintiff had to recompense Defendants for previous days for which Plaintiff was paid but did not actually work. (*Id.*).

Defendants filed a Motion to Strike Plaintiff's Amended Response based on Plaintiff's failure to obtain leave from the Court to file it. (Doc. 85). Although the Court understands Defendants' frustration with Plaintiff's vacillations and last-minute evidentiary filing, it will not strike Plaintiff's Amended Response and the email attached thereto. District courts have "broad discretion in deciding how best to manage the cases before them," *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366–67 (11th Cir. 1997), and the Court determines that the interests of justice require acceptance of Plaintiff's tardy Amended Response and attached email. Furthermore, Defendants are not prejudiced by Plaintiff's filing because they had notice of the existence of the email and its contents. The critical portion of the email—the portion providing the dates of Plaintiff's final week of work and that Plaintiff was not paid for those days—was authored by Defendant Pelli. Additionally, the existence of the email and part of its contents were discussed at Plaintiff's deposition. (Woods Dep. at 15:11–22). Thus, Defendants are not prejudiced by Plaintiff's subsequent filing of the email.

Moreover, even without Plaintiff's additional evidence, summary judgment is not appropriate because Defendants, as the moving parties, have failed to meet their burden under Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 56(a) (requiring the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Even where the non-moving party fails to respond to a motion for summary judgment, as Plaintiff originally did in this case as to the minimum wage claim, summary judgment is not automatically granted. In such a situation, the Court can consider the facts set forth by the moving party as "undisputed for purposes of the motion," Fed. R. Civ. P. 56(e)(2), but the Court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

Defendants contend that Plaintiff cannot prevail on his minimum wage claim because in Plaintiff's deposition he did not recall his exact last day of work. The record evidence, without Plaintiff's email, however, is sufficient for a reasonable jury to determine the week in question. Plaintiff's testimony indicates that Plaintiff called-in sick on Friday, January 4, 2014, in order to interview for a new position with a different company. (Woods Dep. at 11:17–23; Bonded Filter Records, Doc. 63-5, at 2[3] (indicating that Plaintiff's interview took place on January 4, 2013)). It is undisputed that Plaintiff did not work for Defendants on Monday, January 7, 2013, or any day thereafter. This evidence could lead a reasonable jury to conclude that Plaintiff's last week of work—the week for which he asserts he did not receive compensation—was December 31, 2012, through January 4, 2013. This evidence combined with Plaintiff's testimony that he was not paid for his final week of work is sufficient to create a genuine issue of material fact. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's minimum wage claim and Defendant's Motion to Strike Plaintiff's Amended Response is moot.[4]

  3.  *Willfulness*

Actions for unpaid minimum wages and unpaid overtime under the FLSA are subject to a two-year statute of limitations unless the violations were willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). "To establish that the violation of the [FLSA] was willful in order to extend the limitations period, the employee must prove by a preponderance of the evidence that his employer either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,

---

[3] Pincites to the Bonded Filter Records are to the electronic page numbers because the original documents do not contain page numbers.

[4] The Court has also been fully briefed on the issues before it and a Reply from Defendants is unnecessary. Thus, Defendants' request to file a Reply to Plaintiff's Amended Response will be denied.

515 F.3d 1150, 1162–63 (11th Cir. 2008). "Reckless disregard of the requirements of the [FLSA] means failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104; *Davila v. Menendez*, 717 F.3d 1179, 1184–85 (11th Cir. 2013).

There are issues of fact as to whether Defendants knew that Plaintiff was working overtime and whether Defendants knew, or recklessly disregarded, the fact that Plaintiff was entitled to overtime pay. (*See* Pelli Dep. at 50:17–22 (stating that Pelli was unfamiliar with the FLSA and did not believe that Plaintiff was entitled to overtime), 33:20–34:1 (indicating that Plaintiff requested to be paid time and a half for overtime hours); Matos Decl. ¶¶ 12–13 (indicating that Pelli had actual knowledge that Plaintiff was working overtime)).

Furthermore, the case relied on by Defendants, *Hamilton v. Embarq Management Co.*, No. 6:08–cv–677–Orl–28DAB, 2009 WL 3668871 (M.D. Fla. Oct. 26, 2009), is inapposite. The employer in that case, unlike the Defendants here, "took affirmative steps in an attempt to comply with FLSA requirements." *Id.* at *4. Defendants in this case simply plead ignorance of the FLSA and claim that they did not have knowledge of Plaintiff working any overtime. Such factual issues are questions for the jury.

### B. Fraudulent Inducement Counterclaim

In their Counterclaim, Defendants assert that Plaintiff fraudulently induced Defendants to enter a reduced-rate lease agreement by either affirmatively stating that Plaintiff intended to remain employed by Defendants or by intentionally concealing the fact that he intended to leave Defendants' employ. While there is no evidence to support the former, there is an issue of fact regarding the latter.

"[T]here are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an

intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quotation and emphasis omitted). "Fraud may [also] be based on . . . an omission of material fact," *JDI Holdings, LLC v. Jet Mgmt., Inc.*, 732 F. Supp. 2d 1205, 1233 (N.D. Fla. 2010), otherwise known as fraudulent concealment, s*ee Grills v. Phillip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1119 (M.D. Fla. 2009) ("In Florida, fraudulent concealment claims and fraudulent misrepresentation claims are identical."). However, in an arms-length transaction, neither a misrepresentation nor an omission is actionable if the "truth might have been discovered by the exercise of ordinary diligence." *JDI Holdings*, 732 F. Supp. 2d at 1233 (quotation omitted); *see also Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) ("Generally, in an arms-length transaction, . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence[,] have discovered." (quotation omitted)).

Defendants summarily assert that Plaintiff falsely stated that he intended to remain employed by Defendants at the time he signed the January 4 lease agreement. Defendants also accuse Plaintiff of signing a Concession Addendum at the time and then stealing the executed agreement from Defendants' office. (Pelli Dep. at 92:15–22, 95:11–97:10). Defendants have no evidence to support their assertions and cite only Defendant Pelli's conclusory allegations. Pelli, however, admits that he was not present when Plaintiff signed the January 4 lease agreement and that he has no knowledge of whether the Concession Agreement was signed or whether any affirmative representations were made in reference to Plaintiff signing the agreement. (*Id.* at 92:1–93:9, 98:1–16, 100:10–19). As noted above, Ms. Cabera, who was present when Plaintiff signed the agreement provided a sworn declaration stating that Plaintiff did not sign a Concession

Addendum and that he did not make any representations regarding his continued employment with Defendants at the time he signed the lease agreement.

Nevertheless, there is a genuine issue of material fact regarding Defendants' alternate theory of fraudulent concealment. There is evidence on the record that Plaintiff knew the reduced rent rate was contingent on his continued employment with Defendants, that he knew a Concession Addendum should have been signed and that he interviewed for a new job on the same day that he signed the new lease agreement. Based on this evidence, a jury could determine that Plaintiff fraudulently concealed the fact that he planned to leave Defendants' employ. Additionally, the fact that Plaintiff had interviewed for and possibly been offered a new job at the time he signed the lease agreement is not a fact that Defendants could have discovered by their own diligence. Therefore, Plaintiff is not entitled to summary judgment on Defendants' Counterclaim.

### C. Motion in Limine

Plaintiff seeks to exclude from trial "evidence testimony and exhibits issued in response to Defendants' subpoenas to (1) Bonded Filter, Inc., (2) JP Morgan Chase, Inc., and (3) Yahoo! Inc." (Pl.'s Mot. in Limine at 1). For the reasons set forth in Judge Baker's Report and Recommendation, (Doc. 72 at 6–7), Plaintiff's Motion will be denied. If, during the course of trial, Plaintiff has a new basis on which to reassert his Motion, he may do so.

### IV. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 72) is **ADOPTED** and **CONFIRMED** as stated in this Order.

2. Defendants' Motion for Summary Judgment (Doc. 32) is **DENIED**.

3. Plaintiff's Motion for Summary Judgment (Doc. 57) is **DENIED**.

4. Plaintiff's Motion in Limine (Doc. 56) is **DENIED without prejudice**.

5. Defendants' Motion to Strike Plaintiff's Amended Response or to File a Sur-Reply (Doc. 85) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 19, 2014.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record