# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MIKE WOODS,**

**Plaintiff,**

**-vs-**                                              **Case No.  6:13-cv-726-Orl-41DAB**

**ON BALDWIN POND, LLC, DANIEL
PELLI, individually,**

**Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES (Doc. No. 153)** |
| **FILED:** | **January 29, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (Doc. No. 154)** |
| **FILED:** | **February 1, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

| | |
|---|---|
| **MOTION:** | **MOTION FOR LEAVE TO FILE A REPLY (Doc. No. 157)** |
| **FILED:** | **February 16, 2016** |

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

These dueling motions for attorneys' fees and costs arise from a dispute between Plaintiff and his ex-employer.  The litigation was particularly contentious, and an understanding of the course of the litigation is necessary to place the instant motions in context.

### A) Factual Background [1]

Mike Woods worked as a maintenance person at an apartment complex owned by On Baldwin Pond, LLC ("OBP").  Woods lived in the same complex and received a partial discount on his rent in exchange for his services. The parties signed at least two lease agreements over the years, which clarified in addenda that the discounted rent was conditioned upon Woods' continued employment with OBP.  In January 2013, Woods successfully interviewed for a new job with a new employer. Soon after the interview, Woods requested a new lease agreement from OBP but failed to disclose his new employment. Unaware that Woods intended to leave his job at the apartment complex, OBP accommodated his request and the parties executed a new agreement. Like the previous leases, the new lease provided for a discounted rate of rent. Unlike the previous leases, it did not include an addendum explicitly conditioning the discounted rate upon Woods' employment with OBP. Within days of executing that lease, Woods quit his job with OBP.

### B) The lawsuit begins

On May 7, 2013, Woods sued OBP and its principal, Daniel Pelli, under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* (Doc. 1).  Plaintiff alleged that he was owed overtime compensation (Count I – violation of 29 U.S.C. §207) and "Defendants failed to pay Plaintiff his final paycheck for his final week of work" (Count II– violation of minimum wage provision).   The Complaint also included a third count for Declaratory Relief, which sought a declaration that Defendants violated FLSA and mirrored the relief sought in the first two counts (Count III).

---

[1]The Court takes the factual summary from the Eleventh Circuit's opinion, *Woods v. On Baldwin Pond, LLC*, 2015 WL 9583490 (11th Cir. Dec. 31, 2015) (Doc. 149).

In their answer (Doc. 8), OBP and Pelli[2] denied liability and asserted a counterclaim for fraudulent inducement under Florida law, alleging that Woods induced OBP to enter the new lease agreement by representing that he would continue working at the apartment complex.

On June 10, 2013, roughly a month after the filing of the Complaint, Defendants served an Offer of Judgment pursuant to Rule 68, Federal Rules of Civil Procedure, offering to allow Judgment to be entered against them "in the amount of $2,200.00, including all of Plaintiff's claims for relief." (Doc. 141-1).  The Offer was not accepted.

Plaintiff, through counsel Andrew Frisch,[3] moved to dismiss the counterclaim for lack of jurisdiction (Doc. 16).  Judge Fawsett denied the motion, finding the counterclaim to be compulsory (Doc. 17). Plaintiff then filed his answer to the counterclaim, and, in an affirmative defense, alleged that the counterclaim is "barred because Defendants attempt to perpetrate a fraud on the Court" (Doc. 18, p. 2). These corresponding allegations of fraud set the tone for the litigation.

The parties conferred regarding settlement, and, on September 20, 2013, advised the Court that they had exhausted settlement efforts and tendered a Case Management Report with proposed deadlines (Doc. 23-24). A Case Management and Scheduling Order was entered (Doc. 25), and the matter was reassigned to a different District Judge.

*C) Plaintiff's representations regarding his claims*

In his sworn Answers to Interrogatories [4] filed July 19, 2013, Plaintiff claimed that he was employed by Defendants from March 8, 2010 through January *8*, 2013, and itemized his claim as

---

[2]Pelli, a New York attorney, was granted leave to appear in this matter *pro hac vice.* Local Counsel, Chesley G. Moody, Jr., also appeared on behalf of Defendants. On September 23, 2014, attorney Charles Greene was substituted for attorneys Moody and Pelli (Docs. 89-90).

[3]Attorney Amanda E. Kayfus appeared on Plaintiff's behalf on December 9, 2013 (Doc. 31).

[4]The Court requires form Interrogatories to be completed and filed in FLSA cases.

"$5,789.76 unliquidated + $600.00 last paycheck = $6,389.76 unliquidated ($12,779.52 liquidated)." (Doc. 19-1).

On December 9, 2013, Plaintiff filed "Amended Answers to Interrogatories" (Doc. 30). Plaintiff now claimed: $11,520.00 unliquidated + $600 (last paycheck) = $12,120.00 unliquidated ($24,240.00 liquidated), based on time and a half rate; $3,491.84 unliquidated + $600.00 (last paycheck)= $4,091.84 unliquidated ($8,183.68 liquidated), based on half time rate (Doc. 30-1). Plaintiff also swore that the first notification he or his attorney gave to his employer about alleged violations of FLSA occurred "upon filing of the Complaint" (Doc. 30-1 p. 4).

On May 8, 2014, Plaintiff filed yet another set of sworn Answers to Interrogatories (Doc. 51). In his Second Amended Answers (Doc. 51-1), Plaintiff claimed to have been employed by Defendants from July 4, 2010 through January *4*, 2013, and averred: "I estimate I am owed $9,720.00 in unpaid wages, plus an additional and equal amount in liquidated damages, as well as my attorneys' fees and costs, as calculated below: $22.50 (overtime rate) x 4 hours= $90 x 108 weeks= $9,720.00 unliquidated ($19,440.00 unliquidated)" (Doc. 51-1). The Interrogatories do not include a claim for failure to pay minimum (or any) wage for the alleged last week of work. Plaintiff reiterated that he gave no pre-suit notification, oral or written, to his employer regarding alleged violations of FLSA (Doc. 51-1, p. 2).

### D) The tortured road to judgments

From the outset, the parties experienced difficulties with each other, and with the Court. Plaintiff filed three discovery motions on February 6, 2014 (Docs. 34-36). Defendants, through Pelli, filed a response (Doc. 37), which contained improper material and was not in proper form. On February 13, 2014, the Court issued an Order to Strike, noting that Pelli filed a brief that was difficult to read and appeared to be improperly scanned, in violation of the Court's CMECF Administrative Procedures (Doc. 38). Pelli also filed an entire unredacted deposition, in violation of the local rules.

*Id.* Defendants were ordered to refile their response, using either an appropriate scanner or a PDF application. *Id.* The Court further ordered the parties to confer regarding the scope of the requested information in a good faith effort to resolve the pending matters, "being mindful of limited amount in controversy in this action." *Id.*

No response was forthcoming within the time period for filing a response to the discovery motions, so the Court issued a second Order, on February 24, 2014, which provided: "To the extent Defendants wish the Court to consider any response, it must be filed, in legible and proper format, no later than February 25, 2014" (Doc. 40). In response, Pelli filed an unsigned Letter (Doc. 41). The Court found that the Letter violated numerous Federal and Local Rules as it was unsigned and not in proper form (single spaced, missing the case style, lacking certificate of service, etc. – see Rule 7(b)(2), Fed. R. Civ. P. and L.R. 1.05), and failed to comply with the certification requirement of L.R. 3.01(g). More importantly, the Court noted that Local Rule 3.01(f) provides that applications for relief "shall not be addressed or presented to the Court in the form of a letter or the like." The Letter was therefore stricken and counsel was "advised that continued filings which fail to comply with the local rules will give the Court reason to consider revocation of the special appearance" (Doc. 42).

On the merits of the discovery motions, the Court granted the motions to the extent they sought a protective order, finding that Defendants failed to give the required pre-service Notice to Plaintiff. (Doc. 42). Subsequently, Plaintiff filed two motions to quash third party subpoenas (Docs. 46-47) and this time the Court agreed with Defendants and denied both motions (Doc. 49). Next, Plaintiff filed two motions to quash third party subpoenas issued after the discovery deadline (Docs. 52, 53). Defendants opposed the motions, contending that Plaintiff had no standing to seek to quash the subpoenas (Doc. 54). Defendants also moved to extend the discovery deadline, noting any delays "can be attributed to Plaintiff's original motion to quash which took several weeks to decide, and

which was ultimately was [sic] denied (Doc. 49), as well as technical reasons that related to the filing

of illegible documents." (Doc. 54, p. 4). The Court noted that Defendants' motion for extension of

time to complete discovery did not comply with the requirements of the Court's Scheduling Order,

and the motion's compliance with Local Rule 3.01(g) was "inadequate" (Doc. 55). Further, the Court

observed:

> Defendants had over six months to complete their discovery. Far from being diligent, the record shows that sometime prior to the filing of the "original" motions to quash (filed February 6, 2014) (Docs. 34-36), Defendants caused to be issued and served three non-party subpoenas that did not comply with the required notice to Plaintiff (see Doc. 42). On February 7, 2014, Defendants responded to the February 6 motions by filing a document that had not been properly scanned (Doc. 37). On February 13, 2014, the Court ordered that response stricken, with leave to refile in proper form (Doc. 38). The motions to quash ripened on February 24, 2014, with no refiling of the response. Thus, on February 24, 2014, the Court issued another Order, which included a statement advising: "To the extent Defendants wish the Court to consider any response, it must be filed, in legible and proper format, no later than February 25, 2014." (Doc. 40). Defendants responded by filing an unsigned Letter, seeking an extension of time until March 11, 2014, due to a vacation (Doc. 41). Noting that the Letter violated numerous Federal and Local Rules, it was stricken by Order dated February 26, 2014 (Doc. 42).[] By same Order, the Court granted the motions to quash, to the extent they sought a protective Order, for lack of notice being provided to Plaintiff. *Id.* This scenario cannot be interpreted as Plaintiff "causing delay" and Defendants showing diligence.

(Doc. 55). The Court denied the requested extension of time, finding "Defendants failed to properly

comply with the Notice provisions of Rule 45 in issuing the original subpoenas; failed to timely and

properly respond to the original motions to quash, causing delay; and failed to promptly pursue this

line of discovery so that it would be accomplished during the sixth month time period allotted." *Id.*

As the litigation continued, so did the difficulties. Defendants filed a motion for summary

judgment on February 5, 2014 (Doc. 32). Plaintiff responded to the summary judgment motion (Doc.

43), and Defendants filed two replies (Docs. 44, 45). Plaintiff filed his motion for summary judgment

(Doc. 57), and Defendants opposed (Docs. 59, 63-69). Plaintiff filed a request for enlargement of

time to meet and prepare the joint pretrial statement, noting despite "the fact that Defendant—and lead

counsel—Daniel Pelli indicated he himself could not be in attendance for today's deadline,

Defendants indicated they would oppose the instant motion" and "it appears Defendants oppose the instant motion for the sake of being difficult." (Doc. 70). Defendants response was equally discourteous, noting: "Plaintiff's attorneys are flouting the Court's authority by disregarding their express obligations to timely schedule and attend pre-trial meetings" and "Ms. Kayfus was forced to mislead the Court, and the parties were unable to confer, on account of her oversight of applicable deadlines" (Doc. 71).

The undersigned denied the motion to extend and recommended that the dueling motions for summary judgment also be denied as "the papers show[ed] that almost every material fact in this case is disputed" (Doc. 72). Both sides objected to the Report and Recommendation, and responded to the objections of each other. Plaintiff then filed an Amended Response in opposition to Defendants' Objections and Defendants moved to strike that response, "as Plaintiff's counsel has not requested leave to file a supplemental pleading, as required by Local Rule 3.01(c)" (Doc. 83). The Court denied the motion to strike, noting failure to comply with Local Rule 3.01(g) (Doc. 84). Defendants tried again (Doc. 85) and the District Judge[5] denied the motion, as "the interests of justice require acceptance of Plaintiff's tardy Amended Response," noting, however, that "the Court understands Defendants' frustration with Plaintiff's vacillations and last-minute evidentiary filing" (Doc. 88). The Court adopted the Report and Recommendation, and denied the motions for summary judgment (Doc. 88).

Despite many opportunities to resolve the dispute, the litigation churned on. In addition to the initial settlement conference, the parties attended an unsuccessful court ordered mediation with a private mediator (Doc. 50). Also, at the final pretrial conference on September 29, 2014, the District Judge referred the parties to Magistrate Judge Kelly to conduct a settlement conference, and scheduled trial for October 27, 2014 (Doc. 91). Judge Kelly promptly issued an Order setting the conference,

_____

[5]The matter was reassigned to the present presiding District Judge.

requiring all parties and counsel to attend in person (Doc. 93).   Mr. Pelli moved to appear telephonically or to reschedule the conference, citing child care obligations (Doc. 95).  He also noted that Plaintiff had not complied with Judge Kelly's direction to provide Defendants with a written settlement offer.  *Id.*  Judge Kelly denied the motion to appear telephonically, noting that Pelli, a named party whose presence was essential, "had sufficient time to find a caretaker for the children," but granted the motion to reschedule the conference (Doc. 97).  Noting that "Plaintiff ha[d] not complied with the Court's order," Plaintiff was again ordered to provide his written settlement offer. *Id.*  The conference was ultimately rescheduled and the parties proceeded to confer with the magistrate's assistance, but an impasse was declared (Doc. 100).

On October 27, 2014, the parties commenced a three day jury trial (Doc. 104).  On day four, the jury returned a verdict in favor of Plaintiff on the minimum wage claim (Verdict, Doc. 120, at 1). As to the remaining claims, the jury returned a verdict in favor of Defendants, determining that Defendants did not violate the overtime provision of the FLSA and that Plaintiff fraudulently induced Defendants to enter the employee-discounted rental agreement (*Id.* at 2–4). The jury awarded Plaintiff $360.00 on his minimum wage claim and awarded $2,000.06 to Defendants on their counterclaim. *Id.* Plaintiff filed a motion for judgment as a matter of law at the conclusion of the Defendants' case-in-chief, and a renewed motion for judgment as a matter of law after the trial.  These were denied. Plaintiff moved for imposition of liquidated damages (Doc. 126) and this was granted (Doc. 137).   Thus, two years after the complaint was filed, the contentious litigation, which persisted despite three settlement conferences and a three day jury trial in federal court, yielded a  judgment in the total amount of $720 ($360 plus $360 in liquidated damages) for Plaintiff (Doc. 138), and judgment in the total amount of $2,000.06 for Defendant (Doc. 139).

At this point each side had, at great cost, achieved a symbolic victory, albeit insignificant in comparison to the time, energy and expense devoted to the endeavor. Many, perhaps most, people

would have been content to call an end to the matter rather than expend yet more legal effort on matters with so little at stake. These parties chose another route.

Plaintiff appealed the judgment in favor of Defendants. By opinion dated December 31, 2015, the Eleventh Circuit affirmed (Doc. 149). The mandate was issued January 29, 2016 (Doc. 152).

Again, the parties had the opportunity put this matter behind them. Instead, the instant motions, which were previously filed and denied pending the appeal, are renewed and presented to the Court. The parties have filed responses (Docs. 155, 156), Plaintiff moves to file a Reply,[6] and has filed Notices of Supplemental Authority (Doc. 158, 159). For the following reasons, it is **respectfully recommended** that the Court leave the parties where they are and deny both motions.

## Plaintiff's Motion

### I. Standards of Law

29 U.S.C.§ 216(b) provides that in an FLSA action seeking unpaid wages and overtime the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id*. Section 216(b) has been interpreted to mean that "fee awards [are] mandatory for prevailing plaintiffs." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1542 (11th Cir. 1985) (citation omitted); *see also Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987). The determination of a reasonable fee under this provision, however, is a matter within the sound discretion of the trial judge. *King v. McCord*, 621 F.2d 205, 206 (5th Cir.1980).

To calculate a reasonable award of attorney's fees, the court applies the familiar lodestar approach of multiplying the reasonable hourly rate by the reasonable hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). "A reasonable hourly rate is the prevailing

---

[6]This motion has not been referred but the undersigned **recommends** it be denied.

market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (*citing Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984)).

In determining what is a reasonable, this Court is mindful of the factors identified in *Johnson v. Georgia Highway Exp.*, *Inc.*,  488 F.2d 714, 717-19 (5th Cir. 1974),[7] namely:  (1) time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman,* 836 F. 2d at 1303.  An applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence of reasonable rates. *Norman*, 836 F.2d at 1299.  In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

 "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.  Accordingly, counsel may not bill any hours to their adversary which they would not bill to their client. *Hensley*, 461 U.S. at 434. Where the time or fees claimed appear expanded or lack documentation or

---

[7]*Johnson* was overruled on other grounds, *Blanchard v. Bergeron*, 489 U.S. 87 (1989).

-10-

testimonial support, a court may make a fee award based on its own experience and knowledge. *Norman*, 836 F.2d at 1303 (citation omitted).

Notwithstanding the above, while fees are normally awarded prevailing plaintiffs in FLSA actions there are "special circumstances" that can render such an award of attorney's fees unjust. *See, e.g.*, *Goss v. Killian Oaks House of Learning*, 248 F.Supp.2d 1162, 1168 (S.D.Fla. 2003) (denying motion for fees in an FLSA case, noting "an entitlement to attorney's fees cannot be a carte blanche license for Plaintiffs to outrageously and in bad faith run up attorney fees without any threat of sanction"); *Reyes v. Aqua Life Corp.,*632 F. App'x 552 (11th Cir. 2015) (affirming 85% reduction on attorney's fee award as sanction); *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, No. 8:07-CV-52-T-30MAP, 2008 WL 9396456, at *2 (M.D. Fla. Feb. 1, 2008), *aff'd*, 560 F.3d 1241 (11th Cir. 2009) ("Put another way, there are some cases in which a reasonable fee is no fee").  Upon review of the circumstances here, the undersigned concludes that this is such a case.

*II. Discussion*

In his motion, Plaintiff claims entitlement to an award of $48,028.75, contending that "Plaintiff is the prevailing party *in this matter* because, as a result of the prosecution of his lawsuit, he obtained a judgment in his favor for all minimum wages he claimed were due and owing to him, as well as an equal amount as liquidated damages"(Doc. 153, p. 1 emphasis added). As the putative prevailing party, Plaintiff's counsel calculates his fees as follows: 346.9 attorney hours and 2.15 paralegal hours totaling fees in the amount of $96,057.50, however, "in light of the fact that he prevailed on only 1 of his 2 claims for damages (minimum wage) . . . Plaintiff seeks only half of that amount or $48,028.75." (Doc. 153, p. 9).  Plaintiff arrives at this sum by reasoning that "both claims were so intertwined that time spent on his overtime claims was necessarily time also spent on the minimum wage claim." *Id.,* p. 12. As explained below, none of these assertions survive scrutiny.

*Plaintiff's status as prevailing party*

Plaintiff claims to be the prevailing party and characterizes the verdict as "an excellent one" (Doc. 153-1, p. 7). The record is to the contrary.  Though Plaintiff "respectfully suggests that, in this case, the Court should focus more on the results obtained rather than the amount in controversy" (Doc. 153, p. 13), by either measure, Plaintiff's case is closer to trivial than excellent.  To recap, Plaintiff *lost* on his main claim for thousands of dollars (overtime) and *lost* on his claim for Declaratory Relief (to the extent it incorporated the overtime claim); *lost* on the counterclaim (and a judgment was entered *against* him for $2,000.06); was affirmatively found to have engaged in false statements or omissions of material fact; and recovered, in total, only $720.00 on his wage claim – an amount significantly less than the judgment entered against him on the fraud claim.  In view of this meager showing, counsel's claim that: "the results obtained on Plaintiff's behalf could not have been better" (Doc. 153., p. 12), is nonsensical.[8]  While Plaintiff prevailed on the wage claim, he did not prevail "in this matter."  Viewed holistically, Plaintiff received, by any measure, a technical victory on a small part of a small case.

*The nature of the wage claim*

Even assuming that Plaintiff is entitled to a reasonable fee, the suggested award is not reasonable as a matter of law. As Plaintiff lost his overtime claim and lost the counterclaim, any fee that could possibly be due here must be limited to those efforts reasonably directed to the prosecution of the wage claim.  Plaintiff fails to meet his burden to present such a showing here.

In his calculations, Plaintiff's counsel asserts that he is entitled to half the total fees for the litigation because there were two intertwined claims and time spent on one claim necessarily equals time spent on the other.  This observation is patently flawed in that Plaintiff had difficulty even *defining* his wage claim; there is no showing that the claims were intertwined; the calculation fails

---

[8]Indeed, the Court knows of no client who would welcome a public finding that he engaged in fraud.  Counsel's overstatement of the benefits obtained by his client from this suit is indicative of a professional blindspot with respect to this litigation.

to account for significant time defending against the counterclaim; and the record shows that the wage claim was all but ignored by Plaintiff for the majority of the litigation.

As detailed in the history above, Plaintiff initially claimed that he was owed $600 for his final week of work (not the $360 the jury awarded), and his claim – including the number of days he worked that week– changed repeatedly over the course of litigation.  Moreover, Plaintiff's efforts at prosecuting the claim were meager and sporadic. Indeed, as the District Judge observed in his Order denying the summary judgment motions:

> In Plaintiff's minimum wage claim, he asserts that Defendants unlawfully withheld Plaintiff's pay for his final week of work. Defendants moved for summary judgment on this claim, (Defs.' Mot. Summ. J. at 8–9), but *Plaintiff did not address the claim in his Response, nor did he move for summary judgment on the claim.* Additionally, in his initial Response to Defendants' Objections to the Report and Recommendation, Plaintiff stated that he *"d[id] not oppose Defendants' requested relief as it pertains to the requested dismissal of Plaintiff's final paycheck claim."* (Pl.'s Resp. to Defs.' Objection, Doc. 78, at 1 n.1). Nevertheless, eight days later, Plaintiff filed an "Amended Response," wherein Plaintiff retracts his previous statement and opposes the entry of summary judgment as to his minimum wage claims.

(Doc. 88  emphasis added). The record reflects that the wage claim was not the primary or even secondary focus of either side, and Plaintiff's interest in the claim was minimal.

Additionally, there is no showing that the wage claim was "intertwined" with the overtime claim, and, in fact, the record shows just the opposite.  The elements of each claim are different and so was the proof. The wage claim was expressly limited to wages due for the final week (or less) Plaintiff worked.  No overtime was claimed for that week. The Court agrees with Defendants that the wage claim was both minor and distinct from the main claims of overtime and fraud.  Plaintiff's two claims are simply not equal and splitting the bill in half is not appropriate.

Finally, Plaintiff's support for the fees sought is woefully inadequate.  The time sheets include entries related solely to the unsuccessful claim or counterclaim defense, or are presented as block billing, making identification of relevant time impossible. It is not the task of the Court to wade through the voluminous records and guesstimate which portion of an entry might reasonable relate

to the wage claim.  Moreover, Plaintiff makes no effort to exclude from the ledger uncompensable

time, as required by *Hensley*, 461 U.S. at 434.   To the extent Plaintiff claims duplicative time, travel

time or purely clerical time[9] these items are not shown to be compensable here.

Where, as here, the time or fees claimed seem expanded or lack documentation or testimonial

support, a court may make a fee award based on its own experience and knowledge. *Norman*, 836

F.2d at 1303.   Thus, the Court turns to the question of what fee is reasonable to award to counsel for

a haphazard prosecution of a minor claim, where the purely technical victory is overshadowed by a

larger counterclaim verdict and a finding that Plaintiff committed fraud.   For all of the reasons

discussed in this report, the undersigned recommends "none."

A review of the *Johnson* factors supports this conclusion.  With respect to the time and labor

required, Plaintiff claims 174 hours of attorney time were required to recover the $720 at issue.[10]  In

view of the fact that Defendants offered more than this amount one month after suit was filed, this

claim is unpersuasive.[11] Setting aside the unsuccessful overtime claim, but for Plaintiff's own conduct

in fraudulently obtaining the lease, it appears that this matter could (and should) have reasonably

settled shortly after a demand was made.[12]

As for the novelty and difficulty of the questions posed and the skill requisite to perform the

legal service properly, a wage claim is a well-established cause of action and, while counsel's

---

[9] For example, Plaintiff seeks an award for sending a "Letter to Plaintiff with Welcome Packet."

[10]Half of the total fees charged, per Plaintiff's calculations above.

[11]Plaintiff contends that the Offer was not complete relief, as counsel had incurred more than $2,000 in attorney's fees by then, and fees are part of the claim.  The Court will address this argument in the context of Defendants' motion for fees and costs, *infra*.  For present purposes, "in determining whether an attorney's fee award is excessive, the court may consider whether a rejected Rule 68 offer of judgment adversely impacted the plaintiff's success, even where, as here, the requirements of Rule 68 of the Federal Rules of Civil Procedure have not been satisfied." *Anderson v. Unum Life Ins. Co. of Am.*, No. CIVA 2:01CV894-ID, 2007 WL 604728, at *14 (M.D. Ala. Feb. 22, 2007).

[12]The Court is puzzled by the contradictory sworn representations presented by Plaintiff and his counsel with respect to attempts to settle this matter prior to filing suit.  In his Interrogatories, Plaintiff swore (twice) that the first notification made to Defendants regarding his claim was via the filing of the Complaint.  Nonetheless, counsel presents time sheets that include pre-suit time drafting a "Demand Letter" (Doc. 153-3).

competence, experience and skill is acknowledged, no new ground was tread here.  Counsel was not precluded from working on other matters while representing Plaintiff, and there is no evidence that there are time limitations or other matters making the case undesirable.  Although not directly addressed in the brief, the Court assumes that the fee was contingent and Plaintiff does not appear to be one of counsel's particularly well established clients. None of these factors cut in favor of a fee award.

As discussed above, the amount involved and the results obtained are far from impressive. Too, Plaintiff's questionable veracity, as confirmed by the jury, undoubtedly complicated and prolonged this litigation.  That increased cost is not appropriately shifted to Defendants.  As for the customary fee and awards in similar cases, the Court finds Plaintiff has not cited any "similar" cases; that is, cases where a plaintiff lost his main claim, recovered only a few hundred dollars on his other claim, rejected an early offer in excess of his ultimate recovery, and was found liable for fraud on a counterclaim well in excess of his own recovery.  Under the unique circumstances present here, the Court finds a reasonable fee to be zero, and **recommends** same.

The Court recognizes that Defendants, in their response brief, do not advocate for this result, but contend that a 90% across the board reduction, yielding a total fee of $3,273.00, is an appropriate fee award to Plaintiff (Doc. 155).  While the undersigned feels this is generous, to the extent Defendants are willing to pay it and, should the District Court feel an award of zero to be too harsh a result here, it is **alternatively recommended** that an award of $3,273.00 be made.

*Costs under 29 U.S.C. § 216(b)*

Plaintiff also seeks an award of $12,368.51 in costs (Doc. 153-1).  While it is true that "taxable costs are expressly awarded to a prevailing plaintiff in an FLSA action," *Reyes,* 632 F. App'x at 556 (citing 29 U.S.C. § 216(b)), trial courts still have discretion to reduce or deny a costs award in such a case.  *Id.*  Here, even if the Court were to find that Plaintiff "prevailed" and was entitled to costs,

there is no showing that the costs proffered relate to the claims (as opposed to the defense of the counterclaim), nor that these costs are taxable. *See Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) ("nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term "costs of the action" to differ from those costs as now enumerated in 28 U.S.C.A.§ 1920"); *Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012) (cost recovery is limited by 28 U.S.C.§ 1920).   The costs ledger includes costs for reimbursement of meals and travel expenses for out of town counsel, courier charges, and legal research, none of which are recoverable under Section 1920.[13]   Moreover, the ledger reflects dozens of entries such as "long distance telephone," "copies," and "black & white printing" which are simply too vague to evaluate.   The Court should decline to award costs under FLSA, on this showing.

## Defendants' Motion

Citing Federal Rule 68(d), Defendants move for an award of costs in the amount of $2,529.67, contending that they are entitled to these costs as Plaintiff's ultimate recovery was less than the Offer of Judgment tendered shortly after the start of the litigation.   Defendants also claim that, due to a provision in the Lease Agreement, they are entitled to attorney's fees in the amount of $1,000.00. Plaintiff asserts that neither argument is persuasive. Upon review, the Court **recommends** that the motion be **denied.**

*Rule 68*

Federal Rule 68 provides, in pertinent part:

(a) Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer

---

[13]A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses;(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C.§ 1920.

to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

* * *

(d) Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68.

On June 10, 2013, Defendants served an Offer of Judgment on Plaintiff which provided:

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendants On Baldwin Pond, LLC. and Daniel Pelli, jointly hereby offer to allow Judgment to be entered against them *in this action* in the amount of $2,200.00 *including all of Plaintiff's claims for relief*. This offer of judgment is made for the purposes specified in Federal Rule of Civil Procedure 68, and is not to be construed as either an admission that Defendants On Baldwin Pond, LLC or Daniel Pelli are liable in this action, or that the Plaintiff, Mike Woods, has suffered any damage. This Offer of Judgment shall not be filed with the Court unless (a) accepted or (b) in a proceeding to determine costs.

(Doc. 154-1, p. 5 emphasis added).  As detailed above, Plaintiff obtained judgment on one of its claims, lost on the other two, and Defendant obtained judgment on its counterclaim.  Under the circumstances presented here, the Offer is unenforceable.

The Eleventh Circuit has recognized that "Rule 68 requires that the responsibility for clarity and precision in the offer must reside with the offeror" and "any ambiguity in the terms of an offer must be resolved against its drafter . . ." *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1244 (11th Cir. 2002). Here, Defendants offered to allow judgment to be entered against them "in this action."  The action, however, included three claims *and* a counterclaim which was pending as of the time of the Offer.  It is not clear if the Offer was meant to dispose of the entire litigation or was directed solely to Plaintiff's claims, with the counterclaim proceeding.  In general, "the offeree must know what is being offered in order to be responsible for refusing the offer." *Arkla Energy Res., a Div. of Arkla, Inc. v. Roye Realty & Developing, Inc.*, 9 F.3d 855, 867 (10th Cir. 1993).

More importantly, the hybrid nature of the litigation and the split results do not support a Rule

68 cost award.  Plaintiff brought three claims in this litigation and Defendants prevailed on two of

them *and* prevailed on the counterclaim.  Not surprisingly, then, Defendants maintain that they are

the "net winners" and the "prevailing parties" in this action (Doc. 154, p. 4).  If, indeed, Defendants

are the prevailing parties, their route to recover costs is Rule 54, not Rule 68.  It is well-established

that Rule 68 does not apply where the defendant-offeror has received judgment in its/his favor.  *Delta

Air Lines, Inc. v. August*, 450 U.S. 346, 351-52, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981); *see also

Lentomyynti Oy v. Medivac, Inc.*, 997 F.2d 364, 375 (7th Cir. 1993) ("Thus, in cases where a defense

verdict follows a rejected defense settlement offer, the trial court has discretion to award Rule 54(d)

costs, but it does not have the ability to award Rule 68 costs").  Even if Rule 68 applied here,

Defendants seek full costs, making no distinction as to which costs were the result of defending

Plaintiff's claims and which relate to the successful prosecution of the counterclaim.[14]  For these

reasons, and considering that Plaintiff avers that Defendants did not comply with Local Rule 3.01(g)

prior to filing the motion, the Court should decline to award Rule 68 costs to Defendants.

*The Lease Agreement*

Defendants next contend that they are entitled to attorney's fees because of a provision

contained in the Lease Agreement, which states:

> ATTORNEY'S FEES. In the event legal action is instituted to enforce this Agreement
> hereof, the prevailing party shall be entitled to an award of reasonable attorney's fees,
> in addition to court and other costs … .

(Doc. 57-17).  The Court agrees with Plaintiff that Defendants are not prevailing parties in an action

to enforce the Lease Agreement and are not entitled to fees under this provision.

---

[14]It appears that Defendants' bill of costs includes reimbursement for printing "voluminous cell phone records," and subpoenas and witness fees for Sprint and JP Morgan Chase. As Defendants acknowledge, however: "the bulk of the pre-trial litigation involved discovery disputes centering on Defendants' efforts to obtain documents from JP Morgan Chase and Sprint Cell Phone, showing that Plaintiff was not at work during hours that he claimed to be working, which was a defense to Count I **and had nothing to do with Count II**." (Doc. 155, p. 5  emphasis original). Thus, Defendants are seeking under Rule 68 to tax costs they incurred for successfully defending against the overtime claim.

Although Defendants claim to be the prevailing party in this litigation, there is no credible claim that the legal action was instituted "to enforce" the Lease Agreement.  In fact, the basis of the counterclaim is precisely the opposite – Defendants sought to avoid the terms of the lease (the below market rent), due to Plaintiff's fraud in procuring it. Under Florida law, "[a]n action for fraud in the inducement is not considered an action 'in the enforcement of a contract,' but it may be considered an action that 'arises out of the contract.'" *Islander Beach Club Condo. v. Skylark Sports, L.L.C.*, 975 So. 2d 1208, 1209 (Fla. 5th DCA 2008).  The plain language of the provision makes it inapplicable here.  Defendants have failed to establish that they are entitled to attorney's fees under the Lease Agreement or costs under Rule 68**.**

*Costs under Federal Rule of Civil Procedure 54(d)*

Defendant also seeks costs under Rule 54(d), which provides, in pertinent part:  "Unless . . . a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). As recognized by the Eleventh Circuit, "[t]hat provision establishes a presumption that costs are to be awarded to a prevailing party, but vests the district court with discretion to decide otherwise." *Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th Cir. 2000). Under the circumstances detailed above, the undersigned does not recommend an award of costs.

In this circuit, "[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d)." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F. 3d 1036, 1043 (11th Cir. 2007) (internal citations and quotations omitted). Here, Plaintiff and Defendants each obtained a judgment.  However, "Federal Rule of Civil Procedure 54(d) limits the number of prevailing parties in any particular case to one." *AGSouth Genetics, LLC v. Georgia Farm Servs., LLC*, No. 1:09-CV-186 WLS, 2014 WL 2117451, at *3 (M.D. Ga. May 21, 2014), citing *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010).  In view of the mixed judgment, and in light of Defendants' conduct which prolonged this litigation, the equitable result is for each side to bear its

own costs. *See, generally, Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir.1996) (in the event of a mixed judgment,  it is within the discretion of a district court to require each party to bear its own costs); *Testa v. Village of Mundelein*, 89 F.3d 443, 447 (7th Cir.1996) (considering the mixed outcome, decision requiring each party to bear its own costs is within the court's discretion); *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 46 (1st Cir. 2010) ("In situations in which one party prevails on some claims and the other party prevails on other claims, the litigants are commonly ordered to bear their own costs.").

**Conclusion**

For the foregoing reasons, it is **respectfully recommended** that the motions be **denied,** and that neither side be awarded attorney's fees or costs. Alternatively, Plaintiff should be awarded attorney's fees of $3,273.00.

A party waives the right to challenge on appeal a finding of fact or conclusion of law adopted by the district judge if the party fails to object to that finding or conclusion within fourteen days after issuance of the Report and Recommendation containing the finding or conclusion.

Recommended in Orlando, Florida on April 29, 2016.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy